Thank you. Good morning, Your Honors. May it please the Court, my name is Karen Swigert, and I'm appearing on behalf of Appellant Kate Adams. On New Year's Eve 2013, Kate Adams allegedly sent a private text message to a friend condemning racist images. Seven years later, Ms. Adams was constructively discharged from her employment for those private messages. It is undisputed that Ms. Adams was off-duty when she sent those messages. It is also undisputed that Ms. Adams was unrelated to her employment. The issue on appeal here is the district court dismissed Ms. Adams' First Amendment retaliation claims holding that Ms. Adams' speech condemning racist images did not involve a matter of public concern. And this Court granted interlocutory appeal to decide the narrow issue of whether private speech condemning racism should be afforded First Amendment protection. Go ahead. I would just, a quick point to clarify, was, does the record indicate or do the allegations indicate that there's something about two different people? And I didn't understand whether the text message had been sent two different times or it was two people on the same text thread. Do we, do we know? We actually don't know that, Your Honor. Okay. There's a lot to be worked out in discovery. We have a very limited view of what was in these text messages. My client didn't have these text messages any longer. And so that is something that we don't know at this point. Okay. So my understanding is that this happened in 2013 on New Year's Eve, correct? Correct, Your Honor. And along with the, your client sent some videos of her kids on New Year, whatever they were doing, they were playing. And then these, they weren't videos, but they were screenshots or something, or picture images. And the claim was, I guess we're only able to recover part of them because when this all becomes relevant, it's how many years later when? Seven years later, Your Honor. Seven years later. And so at the time, it's between, they're all police officers. And at that time, what is your client's rank at that time? That's a good question. I'm not sure. I believe that in 2017, she became chief of police. I'm not sure what her rank was at that time, but I believe she would have still been in management at that point. A captain, probably. Probably, Your Honor. And the two other people that saw these were what rank? I believe they were the same rank, Your Honor. So they were all like captains or something along those lines. And they were friends at the time. And so nothing comes about here. And then later, it sounds like they weren't friends, possibility, because your client becomes chief of police. And there are allegations that she had an IA investigation on one of these. There were complaints. And then that person started complaining about her and that somehow, so it came about. So the employment action where your client, basically, you're claiming she was forced to resign because of these, we can't call them videos. What should we call them? I would say... Screenshots. I think that works. I mean, screenshots, yes. Okay. So in the district court's concern was that protecting, so it's really undisputed in the record that there was no employment grievance going on at that particular time. So we're really talking about on matters of public concern. And does an employee's First Amendment right to speak extend to all non-job-related speech or only to non-job-related speech on matters of public concern? I think that's an open question, Your Honor. I think that the Supreme Court in Roe v. San Diego has shaded that it might not be required to have that public-sum requirement. I think that this Court in Dibble has also suggested that. But we would say that under either standard, obviously, under the standard, if you're required to meet the matter of public-concern requirement for private speech, that this would pass and should be remanded for further consideration. But also, if there is a public-concern requirement, I think that this also meets that. Because you have a situation here, whether or not you — a speech is in private or made publicly, it still has First Amendment protection. And this is a — these were images related to racism and discussing racism. And this Court and the Supreme Court has consistently said that racism is a matter of public concern. And so when — So your best cases are what, Rankin and Hernandez? Rankin, Hernandez, Your Honor. I would say for — also NTEU. The Court gave a great case where it talked about what are — the speech that wouldn't be related to job and employment that would be protected under the First Amendment. So you have a case where an engineer is speaking about — I don't remember the — I think it was a dance recitals. But NTEU gives a lot of examples of work-related cases where First Amendment speech is protected, even if it's not specifically related to something in the person's job. Let me ask — I think your toughest case to overcome, at least for me, is the city of San Diego case. And that's the case of the police officer who was posting videos and selling them. You know, I guess he was in a police uniform and would undress himself and do other things. And there the Court said, you know, in a procurium opinion reversing our Court, said it's not an NTEU case because that case did involve an adverse impact on the employer, even if the speech itself was not related to an employee — employee grievance or internal operations of the police department. But then it also said not all public employees' private speech requires Pickering balancing. And it said that that case was not a matter of public concern because it didn't — and it was using — it was using Connick as a guidepost for figuring out what we should consider to be matters of public concern. Why is this purely private text message between two people different than the San Diego videos? I think that with the San Diego videos, it was getting to a place where it was impacting the workplace. And that moves it into a different analysis than what you have here. There is no allegation at this point in the proceedings that this was somehow hurting morale or hurting the department. It was a very different scenario than the San Diego case. And I think when you have — again, when you look at the NTEU cases, speech that is, you know, innocuous or not impacting the — the workplace, it — there's two different paths that you can choose in terms of the case law. And I think that the Court chose the wrong one. The Court — the Court chose — the district court chose those that are close call cases. And that's when you get into looking at the form and the context. When you look at the content itself — and again, this Court has said content is king. Content is the primary thing that you look at. Racism is a matter of public concern. The Court didn't need to get to form and context because the content itself — Roberts. So in your — in your view, any text message that involves racist content would be a matter of public concern because racism just always, almost like per se, is a matter of public concern? Any — any kind of racist text message of any kind would necessarily require pickering balancing? I think it would, Your Honor. And I think that's demanded by the Court's standard in Connick and also has been adopted by this Court. When you're talking about racial discrimination or racism, other things, that is inherently an issue that is a matter of concern for the public. I mean, if you're talking about racial discrimination, I would agree. You know, if someone goes and — and puts a post up on Facebook or somewhere else on a platform saying, I denounce racism, or you're articulating your views about racism, I would agree with you. I think that clearly is a matter of public concern. I guess to me, it's a little bit more fuzzy sharing a racist joke or a racist photo. And I'm not suggesting that Ms. Adams — that that was her intention, but I'm just — it seems a little bit hard for me to accept that just the pure sharing of it between two private individuals is enough to necessarily make it a matter of public concern. Well, let's talk about this, too, in terms — you mentioned the Pickering balancing test. We're not there yet. Right. We haven't even gotten to the part where you balance it. We're just at, is this a matter of public concern? Once you get to Pickering balancing, you then decide you weigh it and look at the potential damage for the agency and other things. So even if your client wins here, she — it would go back, and then there's more that has to be done. Yes, Your Honor. Why do you say that under CONIC that form and context don't matter? I would say that — I mean, basically, it's content, form, context. And you're saying, no, form and context don't matter. I would say that for cases where the content is so clear that they don't matter. And if you look at — What's your best case on that? Hernandez. Because the problem I have with this is that you've got this, as Judge Sanchez said, it's not posted. It's saying, oh, here's what some jerk sent me. Why does that automatically qualify when the context is private and intended not for public consumption? If you look at — so the cases, again, this Court has said that content is king, and content has primacy in terms of reviewing whether this is a matter of public concern. If the content is there, there's no need to get to those other things. And again, if you look at Hernandez, this Court has said that. Do you think that it said that or it said when the content is so clear that the others become less? Or did it say you don't need to worry about the other? I think it's — I mean, Hernandez seemed to focus on if you have a subject matter that's clearly a — would be a public concern. They seemed — they did seem less concerned about the other two. But I think Judge Shub said, well, I'm concerned that we're conflating all three. And so content, I would argue that the standard that's out there is that if there is content that is a matter of public concern, the other two you don't need to look at. And the only time that you have to get to those other two is when it is a close call case. So when it's a workplace grievance, when it's something within the, you know, inner workings of the department or a complaint. I guess I have a bit of a hard time with that because Hernandez, I think the form really did matter. The fact that this was posted on Facebook — it was to friends, but it was generally accessible — meant that it was a form of speaking out into the public square, and then you have this content, these anti-Muslim statements that were being made on those postings. That seems to me to be pretty different than a private text message between two individuals. Are there any Ninth Circuit cases that talk about this in the context of private text messages? There aren't. This isn't something — at least not that I have found, Your Honor. I would say, though — What about the case on the bar where the person said something about, I hope they get the guy — I hope they get Reagan the next — heard the newscast? That is the — I believe it's Reagan is how it's pronounced — case, Your Honor. And that one was certainly in a workplace that was a private message. And there's a lot of case law — and that was a Supreme Court case, Reagan. Oh, you mean Rankin. Rankin. I'm sorry, Your Honor. Yes. In the Rankin case, again, that was a private one person to another. It was overheard. And on that basis, that person was — I believe they were removed from office or whatever their employment was. So certainly there are cases out there, and this court has ruled itself that private speech — Well, and that in the Supreme Court said — was that person working at the time or in Rankin? I believe they were, Your Honor. Yeah. Yeah, and it was — But it was said to someone else in response to a bulletin that — some sort of news announcement that there had been an attempt on Reagan's life or something like that. And they said, next time, I hope you get him. But they said that that was protected speech? They did, Your Honor. That was protected. It was a private — another private conversation, one person to another. It was overheard by a supervisor, and that person was — there was action taken against them for it. And so I have — to Your Honor's conversation, I don't think there's a case out there about text messages, but certainly there are analogous cases. And the court just spoke to the one that's the most important there, which is the case — the private case, the private speech that was overheard. And this — I think that is a great analogy to what we have here. There was private speech, one text message to another. It was brought to the attention of the Department seven years later. She was eventually discharged for it. And I feel like that's a good answer to your court's question. Do you want to — unless there's other questions, do you want to save the balance for rebuttal? I would, please, Your Honor. Thank you. Good morning, Your Honors. May it please the court. My name is Dylan DeWitt. I represent defendants of Pelley, Sacramento County, and Scott Jones. Your Honors, the district court made a well-reasoned and well-supported decision finding that plaintiff's racist images in a text message thread with a vague comment regarding who sent it to her were not a matter of public concern. Well, the district court even acknowledged, this is close. Okay. That's why we're here. You're right, Your Honor. It's close on the content. Of course, mentioning racism broadly may be close on the content, but that's why the district court needed to look to form and context to decide whether it took it over that prima facie burden there. On the content — Well, can you — maybe you can start with what's the right default starting point when approaching a case of public employee speech? Do public employees generally have the same First Amendment protection as any citizens, or do public employees generally lack First Amendment protection except when speaking on matters of public concern? So, what's your starting point? Right close to the middle. Lean into your ladder. Okay. Maybe you need to get a little more specific on that. The conic test acknowledges both protections for public employee speech while also acknowledging the needs of a government employer to act as an employer. That's why the prima facie element of public concern lends us to say a public employee's speech rights are limited to those of public concern. It seems like at this point, at the juncture where we are, it's undisputed that there was no ongoing grievance or anything. These people were friends. It was on their own time. It was on a private — is that pretty undisputed for what we have right here? It's undisputed, and it speaks directly to why the content falls short on the public concern. Well, Hernandez is, I think, and Rankin are difficult cases for you, because, I mean, Rankin particularly, that was a private conversation that was overheard. And, you know, here, if you want to say it's a private conversation between these three people, but then some seven years later, someone wants to get rid of the chief of police and brings that up, and it sounded like they even brought it up in the context that they said that she — they tried to imply that she was the one that circulated those, which I guess is undisputed at this point, that they were sent to her by someone, and she had a comment, look at what this racist thing that some stupid person sent to me. So, but that controversy wasn't involved at the time. That's true. The — a couple points there. First, speaking on the content of her text messages here, we're on a motion to dismiss, so we're going to take plaintiff's conclusory allegations that she was opposing the racist images at face value, just for determining it. And second, regarding Rankin, and then Hernandez after that, Rankin specifically spoke on an item of legitimate news interest, and that's what set it apart from plaintiff's speech here. Plaintiff did not give any opinion to the public discourse that would have spoke to — Well, according to her at this point, she said that she condemned that some — this — what were — she condemned that someone had sent it to her, and she thought that they were racist. So, apparently, she did. She did, but the question needs to be, would that be of public concern to the public? And without any more facts pleaded, and she's had an opportunity to add those facts, the conclusion on the content needs to be that it doesn't provide — Well, but apparently, when you dredge this up seven years later, she was told, according to her, that, yeah, the public would be really concerned about that, and it'll be a whole firestorm, so why don't you resign? So, I don't know. It seems like you're talking out of two sides of your mouth here. The form and context then come into play. Did she make an attempt to add this or put it into the public discourse, as did Hernandez, when he posted publicly on his Facebook page, as Judge Sanchez had mentioned? But, I mean, I agree with Judge Callahan. I think Rankin's your toughest case to overcome on your end, because the form is purely private. It's just two — it's a passing comment between two private individuals. No one's trying to broadcast it anywhere. And how different is it to say, I hope they get him, you know, and perhaps an unwise comment to make at a job, but how different is it than just, oh, hey, look, an unwise passing along of a racist screenshot? Why are they so different from each other? The difference comes from this Court's guiding standards when determining whether the content might rise to the level of a public concern. Specifically, again, does it provide any kind of input to the public discourse? Is it something of legitimate news value? Or does it speak on But the former, it did. She was speaking directly to a news headline and giving her opinion, as any citizen speaking should be free to do so. If she had hypothetically made this comment, take the same comment, but it's before she was a police officer, could you discipline her for that? I believe so. It would have come under the same analysis here. You would look to whether the individual speaking was speaking to a matter of public concern and whether the form and context were intended to provide any kind of input into that. So the fact that she was a police officer at the time has nothing to do with this? Has little to do with it. It seems like it has a little bit to do with whether you're a public employee or whether you were speaking as strictly a private citizen. It speaks to specifically why we get into this test in the first place, because it's an employee engaging in this speech. But if it were hypothetically prior to she was ever one of your employees? If it were, it would even speak to why it's even more private, I would argue. The individual making the speech in a private text message that was not intended to be publicized in any manner. It was sharing racist meme images and then making a base on that. The allegation here, they're not, I mean, they're, your facts in this case, and no one's disputing it, is they were screenshots that she spoke against. So you would be able to discipline her many, many years later for that conversation as a private citizen? You would be able to do so because she wouldn't be speaking on a matter of public concern. And whether the person is employed at the time or not, the conic test applies. And the district court looked at the entirety of the record here and found that she couldn't meet that prima facie element. So assuming, for the sake of argument, that this speech was private and did not involve a matter of public concern, did it become a matter of public concern when she was later disciplined? It did not, Your Honor. Now, why isn't that transformed as a matter of public concern when they say the public's going to be concerned about this and we're firing you? So we don't have a case law that really talks about whether private speech then later becomes a matter of public concern. But why is it not logical that when one would say in this case, it was private then, but it's of public concern now? I think either way, you would look at the entirety of the record and look to whether that speaker, that employee... But according to you, the allegations here is when the police department found out about it, they told her if the public sees this, they're just going to go bananas. So they obviously... And then someone sent it to the Sacramento Bee, and not even in the correct context, and bananas happened. So it just seems like a disingenuous argument to say, as I think my colleague was saying, well, the public was pretty concerned. That's right, Your Honor. I think it's conflating the analysis a bit. What we're speaking to at that point is speaking more to the balancing test at the later stage. Here, we're just discussing that first prima facie element. Whether she gets past that. So that the court goes on, right? She's just trying to state a cause of action right now, right? If she were to successfully state it, she'd need sufficient facts showing that she either made an attempt to contribute to the public discourse, or made an attempt to speak on governmental functions. The entirety of the record here shows that she can't meet that first element. What case would say that talking to two of your colleagues is not the public, and two of your colleagues that are police captains? I mean, do we have? I think part of it is we don't have that line drawing here, right? And that's what Judge Shub struggled with. That's why it's an interlocutory appeal. The privacy of the discussion is certainly a fact to consider. One case that can be looked to for guidance is the 10th Circuit's case in Lanby, Monroe. Monroe's, rather. Where the court looked to a text message sent by a former employee who had worked at a new district, and texted a friend and colleague saying, I don't like working here anymore. Racism. That's all he said. There was no more context to it. He did not speak on any actual operating governmental functions in saying it. And the court there found, no, the content does not necessarily meet the standard. And even when we consider that form and context, the fact that the employee there went to lengths to ensure that he was keeping that message private between him and a friend, cut against on the factors balance, it being a matter of public concern. When we think about whether something's a matter of public concern, should we consider what effect it might have if it gets revealed or no? So just to juxtapose two cases, the San Diego case obviously garnered a lot of public interest when it was revealed that this officer had been doing these strip teases and selling videos. But nevertheless, the Supreme Court there said that was not a matter of, that was not speech touching on a matter of public concern. But would it be different if the text messages here were already coming from a chief of police as opposed to someone of a lower rank? As Judge Callahan just mentioned, it did garner newspaper interest and coverage when it came out. Yeah, you're right, Your Honor. If you look to City of San Diego v. Roe, that speech did, or rather the governmental employer found that if this comes out, it will cause public outcry, but nevertheless looked at the intent of that speaker and the content of the speech and found that the public concern element fell short. Similarly here, there was no intent to make it public at the time of the speech. And like Roe, the content of it is not enough to create a matter of public concern, and the form and context of the speech also here cuts heavily against. It seems evolving technology, though. At the time, Rankin, it's in a bar. Okay, it's just people talking. Then in Hernandez v. The City of Phoenix, the officer posted xenophobic memes on his Facebook profile, and that was held to be speech on a matter of public concern. So, you know, we've kind of evolved from, first we didn't, I know it would be difficult for the students to understand, but we didn't always have iPhones, all right, and there wasn't, and even at the time that I think that Hernandez was, Facebook wasn't even as prominent at the time in 2013 as things have subsequently become. So the phone, when you're texting people, that was how, that you could have group text, you could have, you could have a lot of ways to reach people. That certainly seems like going more public than just talking to someone in your home and Rankin says that that was enough in the bar. Rankin also weighed heavily that first factor, that content factor, but even looking at the form and context of it, the- Well, if people get fired for racist comments, it's hard to say that's not very a public concern. I mean, it seems like it's more a public, I think that, I think as Judge Sanchez said, it's obviously something of very public concern of people. Yeah, it speaks directly to the necessity of considering all three factors in that analysis, also considering form and context. I mean, they have people at Halloween parties in blackface that then have to face situations many, many years later that that was racist. Yeah, in that situation, there would be no contribution to the legitimate news interest, there would be no operation of government, there would be no content that made it something that would make it a public interest. This Court also mentioned in Weeks v. Baer that we avoid rigid tests like Appellant is asking here, racism equals matter of public concern. We avoid those rigid tests because if we did so, we'd effectively raise every water cooler conversation to a constitutional issue, flooding the courts with First Amendment cases whenever a governmental employer took action. The issue in this case is not whether she made a racist comment because it's her position at this point that she was commenting on some racist screenshots that were sent to her and that it was disgusting. That's right, Your Honor. I think, again, I think the content factor weighs slightly for her. Again, she doesn't make any attempt to make it public, and that's why form and context are extremely important here. She specifically engaged purposely in private conversation, never intending for that conversation to be public. But it's not the intent for it to be public. It has to be on matters of public concern. Isn't that the element we're talking about? Not your intent for it to be public. It is, but as this Court has mentioned in Hernandez, also mentioned in the Roe case, the intent does matter. The speaker's intent at the time needs to be considered as to determining whether when making the speech the employee intended to submit some kind of public concern item into the public discourse. And here, based on the content, form, and context, the district court correctly found that she did not. Well, there's kind of a saying that the Hell's Angels have, two can keep a secret if one is dead. So at the point that you tell one person something, doesn't — don't you put it in the public domain at this point? Or certainly on a text, but I mean that they say, you know, love may not be forever, but the images that you post on Instagram certainly are. That's right, Your Honor. It does look to, at the time of the speech, did the employee intend to submit a matter of public concern? And here, based on those factors, she did not. Okay. Thank you. Thank you. My colleague mentioned the Tenth Circuit case, Lamb v. Montrose. That was an unreported opinion and not binding in the Tenth Circuit. And if you look at — Well, let me just ask you. I mean, the — obviously, Judge Shub and everyone's concerned about opening Pandora's box and making every comment one of public concern. What if the — all the facts are the same, except Ms. Adams' texts were complaining about a contractor who had botched a project on her house, and she used harsh and colorful language that the department found unbecoming of an officer? What — what do you do with that? I think that's still a matter of public concern. It's some — it's employment. The question, again, then gets later in the — Well, so you're making everything a matter of public concern, then. I — Well, if you look — so look at the standard in Lane v. Frank's Supreme Court decision. It says a matter of political, social, or other concern to the community. Anything related to general interest or value of concern to the public. So if there's value of concern to the public, then it does — it is a matter of public concern. That doesn't mean that you automatically skip over the rest of the Pickering balancing test. So Judge Callahan's example, complaining about a contractor at their home, that's a matter of public concern? Well, is it a matter that's of benefit to the public? So I guess I should clarify the Court's question. Is it complaining directly to the contractor, or is it complaining to — No, to — complaining to her two friends, just like if that's what she had complained about that night.  You're kind of backing up. Like, beep, beep, because you saw the shocked look on her faces, because you're opening Pandora's box here. I think that goes against your argument. Well, why should the — I guess the question is, why should the State be able to fire them? She can say whatever she wants, and somehow it's a matter of public concern. I would say she can say if it's a subject of general interest and of value and concern to the public. But a home — but a contractor not doing a good job at her house, is that the same as — It's not the same as racism, certainly. I think that racism is much closer to something that's of value and concern to the public and would be of interest to the public. That's the content there. But again, if you can — I'm not sure we'd be here if that had been the comment. Sure, but I'm also — But you're saying, but you just want to fling that box right open and let everything — everything she ever said — No, I mean, the question is, what is a — she was fired for this offense. She was fired for this speech. So is that a matter of public concern? It only becomes something that comes to this court if the person's fired over it. And that's why we're here. But then that's kind of a self-fulfilling prophecy. If someone is fired over the position and it becomes newsworthy, then that means anything that gets communicated becomes a matter of public concern. And it can't be that, can it? It can't be that. But that's why you have — I mean, I had my own example of, you know, let's say a public official sends a text that's adulterous, you know, trying to set up a meeting with someone. And then that comes to light, and a person's fired over it. Is that private message a matter of public concern, in your view? The content, I don't think, would be — I don't know if it would be a subject of general interest. I'm not sure about that. Her husband might care about it, but is it that they're trying to fool around with someone else? But is — does the whole community care about adultery? I think that's an open question for a court to consider when that comes up. But I think that the main thing that — this is the first hurdle. We're at a motion-to-dismiss stage. Her First Amendment retaliation claims were kicked out because she didn't meet this threshold of matter of public concern. You get to those questions of whether there was some kind of detriment to the employment agency later on in the analysis. And I would just point the Court to Disrochers v. City of San Bernardino, where this Court said only in a close case where subject matter is only marginally related to issues of public concern does the Court look to whether a statement was made in a grudge or a private interest or something or else. That form and content only comes into play when you have something that is not squarely in the public's interest. It doesn't matter whether it's public or private. It doesn't matter whether it's about a workplace. It's that subject matter, that content that matters. And I would suggest that racism is something that's very important and central to our country still. It's still a matter of public concern. Okay. We don't appear to have any additional questions. Thank you, Your Honor. Thank you both for your argument in this matter. It will stand submitted. So this Court's going to be in recess until we come back out to speak to the students. And I believe that the law clerks will be talking to you.
judges: THOMAS, CALLAHAN, SANCHEZ